# In the United States District court
# Southern district of New York

Emmanuel Obiagwu.

     Plaintiff

V.

Bellevue hospital,
City of New York,
NYU Langone
Jane Doe 1 (in their individual capacity),
Shaina Moore 17253 (in their individual and official capacity),
Clara Akomeah 21871 (in their individual and official capacity),
Chad Leed 25048 (in their individual and official capacity),
Justin Segot 7684 (in their individual and official capacity),
Jane Doe 3 (in their individual and official capacity),
Jane Doe 4 (in their individual and official capacity),
John Doe 5 (in their individual and official capacity) ,
John Doe 6 (in their individual and official capacity),
John Doe 7 (in their individual and official capacity),
John Doe 8 (in their individual and official capacity)

**COMPLAINT**

**JURY TRIAL DEMANDED**

     Defendants.

## COMPLAINT

### <u>JURY</u>
Plaintiff demands a trial by jury

### <u>INTRODUCTION</u>
1. Plaintiff Obiagwu is a law abiding civilian with no convictions and was not known to the defendants or in the location of the incident.

2.  Obiagwu was falsely arrested and forced to a psychiatric hospital by NYPD officers against his will where he was strapped down like a violent animal, drugged, stripped naked and unjustifiably detained for days in Bellevue hospital without signs of mental illnesses being present.


**PARTIES**:

3.  Plaintiff Emmanuel Obiagwu (hereinafter "Obiagwu" or "plaintiff") is a citizen of the state of New Jersey and the United States of America.

4.  Defendant Bellevue Hospital (hereinafter "Bellevue") is a medical center operating in New York City and is an "employer" within the meaning of 29 U.S.C. §203(d), 29 U.S.C. § 152(2), §2611(4)(A), (B), 42 U.S.C. §12111(5)(A), and Executive Law §292(5). At all relevant times, the Hospital acted by and through its nurses and staff and has liability under inter alia, the doctrine of respondeat superior.

5.  Defendant New York city (hereinafter "City" or "the City") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, Defendant City of New  York acting through the New York City Police Department (or "NYPD"), was responsible for the policies, practices, supervision, discipline, training, implementation and conduct of all NYPD matters and was responsible for the appointment of commissioner, retention and conduct of all NYPD personnel. In addition, at all times here relevant, defendant City of New York was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel follows the laws of the United States and the State of New York. Further, under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department and Fire Department Of New York.

6.  NYU Langone is a medical entity which provided the Emergency medical technicians (EMT) and ambulance Plaintiff was transported with.

7. Defendant Jane Doe 1 is a janitorial employee who currently works at the Hudson Yards 7-train station in Manhattan, NewYork. Jane Doe 1 made false police reports against Plaintiff Obiagwu. A picture depicting Jane Doe 1 is attached below ( page 3.)



8.  Defendant Shaina Moore is an officer of the NYPD with a violent history and over 17 allegations, complaints and lawsuits on her records while operating in NewYork City acting under color of law. She is sued in her individual capacity and official capacity.

9.  Defendant Clara Akomeah (hereinafter "Akomeah") is an officer of the NYPD with a violent history and over 6 allegations, complaints and lawsuits on her records while operating in NewYork City acting under color of law. She is sued in her individual capacity and official capacity.

10. Defendant Chad Leed 25048 (hereinafter "Leed") is an officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity.

11. Defendant Justin Segot 7684 (hereinafter "Segot") is an officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity.

12. Jane Doe 3 is a nurse at Bellevue Hospital. She is sued in her individual capacity and official capacity.

13. Jane Doe 4 is a nurse at Bellevue Hospital. She is sued in her individual capacity and official capacity.

14. John Doe 5 is a staff member at Bellevue hospital who strapped Plaintiff to a bed against his will with the help of another staff. he is sued in her individual capacity and official capacity.

15. John Doe 6 is a staff member at Bellevue hospital who strapped Plaintiff to a bed against his will with the help of John Doe 5. he is sued in her individual capacity and official capacity.

16. John Doe 7  (hereinafter "EMT") is an EMT for NYU Langone. He is sued in his individual capacity and official capacity.

17. John Doe 8 (hereinafter "EMT") is an EMT for NYU Langone. He is sued in his individual capacity and official capacity.

## JURISDICTION AND VENUE

18. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1343

19. This Court has supplemental jurisdiction over the following state law claim pursuant to 28 U.S.C. §1367 in relation to the federal claims that it forms part of the same case under Article III of the U.S. Constitution.

20. This venue is proper in this District under 28 U.S.C. § 1391(b)(2). All of the events giving rise to this Complaint occurred within this District.

21. At all times relevant hereto, Defendants, Moore, Akomeah, Leed and Segot are citizens of the United States and resident of the State of NewYork and were acting under color of state law in their capacity as law enforcement officers employed by the City of New York.

## FACTUAL BACKGROUND.

22. On or about the early morning of August 15, 2024 around 2am, Obiagwu was sitting in the Hudson yard MTA train station awaiting the queens bound 7 train which was currently out of service to effectuate nightly cleaning.

23. At or about 2:20am defendants Akomeah and Moore walked onto the 7 train platform from street level and approached Jane Doe 1.

24. Jane Doe 1 made false claims of threats and harassment against Obiagwu which led to his injuries.

25. Jane Doe 1 claimed Obiagwu followed her around and stalked her at her job.

26. After briefly speaking to Jane doe 1 defendants Akomeah and Moore approached Obiagwu and told him he had to leave the station because "*they [jane Doe1] are asking you to leave the station*" without any context or reasonable cause.

27. Moore further stated that Obiagwu was being *"a disturbance"* to "*the people working there*"

28. Once again Moore asked Obiagwu to "*grab his things and leave*"

29. Obiagwu demanded the officers get their supervisor before he answers any questions or communicate with them.

30. Within only 2 minutes of approaching Obiagwu, Akomeah and Moore began using excessive force on him.

31. Both officers pulled plaintiff from the bench to his feet and began pushing him.

32. Officers asked if he was going to "*leave his belongings here*" while physically restraining and pulling Obiagwu in the opposite direction of his belongings making him physically unable to retrieve his property.

33. Obiagwu initially had a messenger bag around his upper body and as he was pulled off the bench with force his messenger bag which has straps dropped down to his ankles and wrapped around his legs.

34. Officers knew or should have known that having a bag strap around his legs would be unsafe and will restrict his movement but they continued to pull and push him until they reached the stairs and pushed him one more time making him fall to the ground.

35. With a smirk on her face after mentioning that Obiagwu had his bag strap around his ankles, Officer Moore and Akomeah intentionally pushed Obiagwu towards the stairs making him fall onto the steel-designed stairs without the possibility of using his hands to break his fall due to being held by the officers.

36. Obiagwu stood up from the stairs after falling and peacefully walked away from the officers to de-escalate and to attempt to go back to retrieve his other belongings left behind.

37. The officers informed Obiagwu that he was being detained as they placed handcuffs on obiagwu.

38. Obiagwu was now handcuffed behind his back and with the bag still around his legs the officers pushed him aggressively again onto the stairs making objects including his cell phone from his pockets and bag fall out onto the ground

39. Obiagwu begged the officers to adjust the tightness of the cuffs but they refused as Obiagwu verbally and physically complained of the pain caused by the officers through the handcuffs.

40. The officers intentionally left behind Obiagwu's property as they exited the station with him.

41. Officer Moore stated Obiagwu was not under arrest but took his phone from him when she realized he was recording.

42. Moore attempted to turn off his cellphone recording by pressing power button and later confiscating the phone and placing it in her pocket.

43. Obiagwu was pushed onto the ground again by the officers who acted aggressively.

44. Obiagwu repeatedly informed the officers that he had a wrist injury but refused to take precautionary actions to alleviate the pain caused by extreme tightness on the handcuffs

45. Obiagwu informed the officers that he was bleeding on his leg from being pushed down the stairs and hitting his knee and they responded "*That's your problem*"

46. While heading towards the exit officers informed Obiagwu that he would be arrested if he comes back into the building or attempts to go back to retrieve his belongings left behind by them.

47. After officers confirmed they won't get his belongings, Obiagwu attempted to turn back indicating that he has to go get them and the officers irately pushed him while on a moving escalator while he was handcuffed and unable to break his fall with his hands making him fall downwards a couple steps off the moving escalator with his face front.

48. Moore then effortlessly tries to pick him back up as he laid face down a moving escalator by pulling the handcuffs causing his entire bodyweight to be put on his wrist with the metal handcuffs causing extreme pain to his injuries.

49. Moore could have picked Obiagwu up by holding on to his arm or wrapping her arms interlocking with his to pick him up but choose to use a method that showed no care or remose for inflicting more pain on his wrist by pulling the handcuffs to lift his entire body backwards.

50. Moore then stopped trying to lift Obiagwu up from the escalator and began yelling orders for him to "*stand up on his feet*" by himself while he was handcuffed laying face down on the moving escalator.

51. After reaching the street's sidewalk and completely out of the MTA train station which completed the officers' goal of *"ejecting him out of the station"* as stated by them. They continued to prolong detainment of Obiagwu in handcuffs and did not let him go.

52. Officers Akomeah and Moore continued to detain Obiagwu outside the train station until additional unit of officers arrived.

53. Officer Moore falsely claimed to arriving officers that Obiagwu *"threw himself down on the escalator"*

54. Officer Moore informed the arriving officers Leed and Segot that her duty was to escort him out of the building which at this point she had already completed but continued to detain him.

55. Leed and Segot informed Obiagwu while he was still in handcuffs that he was *"not in any trouble"*

56. Leed and Segot began asking Obiagwu investigatory non-consensual questions including questions to learn more about his where about. "Where are you coming from?"

57. Leed and Segot stated that all Obiagwu had to do was "walk away" but he had to " give my partner a hard time" insinuating that he didn't like Obiagwu's treatment of his officers.

58. Leed and Segot stated "If you talk you'll make it easier" insinuating that until Obiagwu complies and answers their questions things such as his detainment and tight handcuffs will continue to be made difficult for him for not answering their questions.

59. Officer Moore stated that if the handcuffs are off he might take off suggesting that he is not free to leave even though no crime, arrest or summons was being effectuated.

60. All four officers on the scene stood on the scene with Obiagwu with no course of action to take or any directive on what they were going to do, they just stood there prolonging the detainment of Obiagwu.

61. Obiagwu pretended to walk off to prove he was still being detained and immediately he was stopped and told he was in fact still being detained and "cannot just walk off"

62. Officer Moore began speaking to Leed and Segot privately stating that she doesn't know what to do next about the legality of the detainment and the possibility of Obiagwu filing a lawsuit.

63. Officers Leed and Segot stated to Obiagwu "*why didn't you get up and leave [when the officers initially approached him in the state]*" Obiagwu responded that he pleads the fifth and immediately the officers responded by saying *"now we're **FORCING** you to go to the hospital"* insinuating that because Obiagwu gave their officers a hard time and exercised his right to not answer why, that they [Leed and Segot] are now **retaliating** in defense of their officers as John Doe 5 previously stated that Obiagwu "*gave my partner a hard time*"

64. Leed and Segot concluded that in retaliation for pleading the fifth amendment Obiagwu will be forcefully taken to the hospital.

65. Obiagwu asked the officers to identify and provide their badge number and Officer Leed provided a false identity claiming to be badge number "2503" rather than his correct badge of "25048" at the time of the incident.

66. Obiagwu repeatedly informed the officers that he does not need medical assistance and Segot insisted that he doesn't believe Obiagwu can "take care of himself"

67. Segot stated because Obiagwu "acted the way he acted [by challenging the orders to leave the station]" he feels Obiagwu needs to see a doctor

68. Segot who had already affirmed that Obiagwu was going to be forced to an hospital then begins searching for justification secondary to the detainment by asking Moore "was he acting disorderly" after Obiagwu dispelled his claims of mental illness.

69. Segot knowing he has been exposed for not having legal justification for the detainment then stated "you can make a complaint i really don't care"

70. All officers affirmed with their own words that they had no reason to arrest Obiagwu

71. Segot asserted Obiagwu was being taken to the MENTAL hospital because he fell down the stairs and then asked Obiagwu "Did you trip or did you fall on purpose?" Which shows that he did not know the cause of the fall but will still force Obiagwu to a MENTAL hospital not for his physical injuries but for the fact that he fell down regardless if Obiagwu tripped by accident or intentionally.

72. Obiagwu then challenged Segot by asking Why he was being taken to the hospital if Segot didn't know the cause of the fall and Segot responded by saying "i dont know"

73. Segot affirmed with HIS OWN WORDS that he "*DOES NOT KNOW*" why he was forcing Obiagwu to the hospital.

74. Leed re-affirmed that Obiagwu was being taken to the hospital because he fell down an escalator.

75. Obiagwu revealed to the officers that the alleged "disorderly behavior" was him trying to go back to retrieve his belongings which explained why he fell. Obiagwu explained to dispel any suspicion of mental illness the Officers might have.

76. At this moment all officers were informed that Obiagwu was only attempting to retrieve his property which explains why he "acted disorderly" by trying to re-enter the station which dispels all previous suspicions of "disorderly conduct" or "unsafe manner" as suggested by the officers

77. Segot and Moore claimed they were not medical professionals but concluded Obiagwu needed to be examined.

78. Obiagwu informed the officers again that he is not requesting medical assistance and the officers claimed he will be forced to the hospital no matter what.

79. EMT personnels John Doe 7 and John Doe 8  (hereinafter "EMT") arrived and Obiagwu verbally informed them that he is not requesting their services and is not in need of medical attention and if changes his mind he will head to the hospital by himself.

80. "I am turning down your services" exclaimed Obiagwu to the EMT personnels

81. Obiagwu explained to EMT personnels that all that happened was he got ejected from the station and attempted to go back to get his belongings and fell in the process, asserting that nothing is mentally wrong with him and he did not afflict pain on himself to dispel any psychiatric suspicion EMT's might have but they ignored all the facts and continued to support the police to force him into the ambulance

82. Obiagwu pleaded to EMT personnels that he was not mentally ill and only struggled with the officers because they left his belongings behind but since they have now retrieved it he has to reason to be "difficult" and is now calm which dispels any mentally Ill claims.

83. Obiagwu repeatedly pleaded to the EMT that he was only put in handcuffs for not wanting to converse with them and EMT personnel with no law enforcement training  claimed Obiagwu was "acting disorderly" for not conversing with police.

84. EMT personnels refused to focus on the facts given by the potential patient and continued to defend the police officers while completely not finding any medical reason to medicate Obiagwu but inputting his legal 2-cents in "You gave them a reason to put you in handcuffs" which has no correlation to why medical services were being forced.

85. The officers and EMT physically forced Obiagwu into the ambulance using force.

86. Obiagwu asserted he did not consent to a search of his person or bag

87. The officers searched Obiagwu and his bag.

88. The officers searched Obiagwu and his bag without consent nor probable cause.

89. Leed gave his correct badge number to EMT after giving Obiagwu a fictitious badge number.

90. Upon arrival at Bellevue hospital a female nurse approached Obiagwu as he was handcuffed on a stretcher to begin the triage and Obiagwu immediately affirmed that he "DOES NOT CONSENT" repeatedly.

91. The female nurse informed other nurses that Obiagwu does not consent

92. Another female Nurse 2 approached Obiagwu and once again he asserts that he DOES NOT CONSENT to medical procedures and she replied "okay"

93. The hospital then sent male staff to scare Obiagwu.

94. The male hospital staff then threatened Obiagwu that "you can't leave until you give me a name"

95. Obiagwu went on a rant making it very loud and  clear to hospital staffs, police officers and EMT that he will not provide his name and does not consent to being in the hospital.

96. A third female nurse Jane Doe 3 approached Obiagwu and said he had two options; to stay for 1hour or 60 hours insinuating that if he doesn't accept the unwanted medical attention he would be forcefully medicated and kept as long as the hospital likes.

97. Jane doe 3 makes jokes about giving Obiagwu a name and force an admission into the hospital

98. Jane Doe already pre-textually concluded that Obiagwu would be forcibly admitted BEFORE having any details or information regarding his presence in the hospital.

99. Before speaking or asking the officers why Obiagwu was brought Jane Doe 3 already made a decision to forcibly admit Obiagwu without ANY information as he only asked officers for details AFTER she insisted she will keep Obiagwu for 60 hours

100.    At the moment of asking the officers why Obiagwu was brought to the hospital Jane Doe 3  stated Obiagwu *"lost that privilege [to decline medical attention] long time ago"* which further proves she made a medical conclusion to keep Obiagwu indefinitely long before she possessed ANY INFORMATION whatsoever.

101.    Jane Doe 4 stated *"you're going to see that psychiatrist tonight whether you like it or not"*

102.    Obiagwu informed Jane Does 3 and 4 that he does not consent to being touched and Jane Doe 4 replied "What you gonna do about it?"

103.    Obiagwu informed the nurses repeatedly he does consent to objects being placed on him such as a admission bracelet but rather put it on the seat he was on.

104.    *"Let's get some guys bigger than your size to throw you on the bed and strap you up"* the nurses stated as they kept inappropriately touching Obiagwu against his will and made comments asking if he will *"tell his girlfriend." "I know you have girlfriend problems"*

105. Jane Doe 4 calls out to a Big dude (John Doe 5) over 6'2ft 250lbs by the name of what sounds like (lessie/lessy/jessie) and tells him that she "*has a gift*" for him and "*he [plaintiff] is not talking*" insinuating that the big dude (John Doe 5) should come deal with Obiagwu.

106. John Doe 5 comes and begin talking about having sexual relationship with Jane Doe 4 and how they "sit down" to have sex.

107. Jane Doe 4 then states she often have sex with another male staff who walked in. "We Gangbang all day" and invited Obiagwu to "*come down here with us too*" "*be part of the list [to gangbang]*"

108. John Doe 5 walks back into the room and stands in front of Obiagwu in a threatening manner sizing Obiagwu up.

109. Obiagwu asked the nurses and the big dude if he was free to go and they all responded "NO"

110. Nurses stated that even after the handcuffs are removed and the officers end their detainment Obiagwu still won't be free to leave

111. Jane Doe 4 then suggests that Obiagwu and John Doe 5 should fight.

112. The nurses and lessie began making jokes of chipping in one dollar each and quarters to give to Obiagwu "*for lawsuit*" because "*he is looking for lawsuits*"

113. John Doe 5 searched Obiagwu's person without his consent.

114. Obiagwu exclaimed he does not consent to being touched and jane doe 4 responded "I'm a whore so forget it" insinuating she will touch him anyway.

115. The nurses and officers began searching Obiagwu's phone after searching his pockets and body.

116. The nurses began using Obiagwu's phone, spamming buttons and guessing passcodes to unlock his phone then removing the phone case for no reasonable reason and finding a credit card which they took photos of revealing information on their personal devices and officer Leed stood by and watched and did nothing.

117. Approximately after 1 hour in the hospital Officers removed the handcuffs from Plaintiff.

118. Hospital staffs John Doe 5 and John Doe 6 who were tall large males with the appearance as that of bodyguards told Obiagwu to sit on a bed they pushed into the room so he doesn't get tired standing and told him he would be free to leave in minutes so Obiagwu complied under false pretense.

119.    As soon as Obiagwu sat down on the bed John Does 5 & 6 and other nurses ambushed him grabbing all his limbs and strapping him individually on both legs and both arms with no room or possibility to move  any part of his body in any way, locking him completely still.

120.    Obiagwu didn't resist due to threats of getting beaten up by John does 5 & 6 who were built like bodyguards.

121.    Obiagwu complied in fear but continued to verbally announce his refusal to medical attention.

122.    Obiagwu began to fear for his life.

123.    The nurses Forced Covid vaccines on Obiagwu.

124.    The nurses then drugged Obiagwu.

### 125.    NEW YORK VS. DUNAWAY:

The Supreme Court held that the police violated Dunaway's Fourth and Fifth Amendment rights by picking him up and taking him without probable cause. Further explaining because picking someone up involves an intrusion on par with that of an arrest, it is held to the standard of "probable cause" rather than the lower standard of "reasonable suspicion." Similar to the underlying case Mr Obiagwu was picked up by the responding uniformed officers and handcuffed with show of force and authority that he could not leave.

### CLAIMS FOR RELIEF

### 42 U.S.C. § 1983 - First Amendment Violations of Free press

### (Against City, Bellevue, its Nurses, staff, NYPD officers in their individual and official capacity)

126.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

127.    Plaintiff had the right to be free and not retaliated against for exercising his rights.

128.    Defendants Moore and Akomeah used force to stop Plaintiff from exercising his first amendment right to free press.

129.    Defendants physically stopped Obiagwu from recording in a public place and took away his phone.

130.    Defendant nurses made every attempt to stop Obiagwu from recording including reversing his phone case to block the camera and placing it inside a paper bag and rolling it up

131.    Nurses and hospital staffs searched Obiagwu's phone to combat the video recording of his documentation and put an end to it

132.    Nurses and hospital staffs took every action to prevent the video publication of the illegal detainment.

133.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment.

**42 U.S.C. § 1983 - First Amendment Violations Involving prior restraints.**

(Against City, Bellevue, its Nurses, staff, NYPD officers in their individual and official capacity)

134.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

135.    Moore and Akomeah prevented the video recording and press gathering of their police action against Obiagwu who possessed the right to document governmental activities in a public forum.

136.    Nurses and hospital staffs searched Obiagwu's phone to combat the video recording of his documentation and put an end to it

137.    The nurses proved they were attempting to suppress his documentation stated that they were trying to stop and delete plaintiff's video recording because "he wants to sue us"

138.   Nurses and hospital staffs took numerous actions to prevent Plaintiff from recording the unlawful treatment including blocking his camera with their hands and later using the phone case reversed to block the camera and additionally tying it in a paper bag.

139.   Nurses and hospital staffs took every action to prevent the video publication of the illegal detainment.

140.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment.


**42 U.S. C. § 1983 - Fourth Amendment Violations Involving Unlawful Seizure & Excessive Force** (Against City, Bellevue, its Nurses, staff, NYU Langone, its EMTs, NYPD officers in their individual and official capacity)

141.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

142.   Plaintiff was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

143.   Defendant officers took no actions to investigate or question Obiagwu before wrongfully detaining him.

144.   Defendant officers used excessive force to prevent Plaintiff from going back to get his belongings.

145.   Defendant officers unreasonably seized Obiagwu, thereby depriving him of his right to be free from unreasonable seizure of his person in violation of the Fourth amendments to the United States Constitution.

146.    Defendant officers unreasonably prolonged the duration of the detainment.

147.    Defendant Moore and Akomeah used excessive force to gain control of Obiagwu by pushing him to the ground repeatedly.

148.    Defendants Moore and Akomeah used excessive force when they utilized handcuffs ina way to inflict pain to force Obiagwu to comply.

149.    Defendant officers bruised up plaintiff as a result of violence rather than taking a course of action to de-escalate

150.    The officers unlawful use of excessive force to seize video recording by Obiagwu.

151.    The nurses were repeatedly informed directly by plaintiff that he was refusing and did not consent to admittance but they forced him with no medical justification.

152.    EMT personnels were fully aware of the medically insufficient reasons provided by police officers but refused to apply their training and professional opinions.

153.    EMT were informed and had knowledge that plaintiff does not suffer from mental illness and was only trying to get his belongings when he was placed in handcuffs but they still forced an unnecessary trip to the hospital.

154.    Plaintiff was conscious and able to make clear decisions and refusals but was denied his right to be free by EMT personnel

155.    EMT concluded they were going to force plaintiff to the hospital before they had ANY information from the officers.

156.    Plaintiff was conscious and able to make clear decisions and refusals but was denied his right to be free by nurses and hospital staff.

157.   Bellevue staff  used excessive force by strapping down Plaintiff who showed no sign of violence.

158.   Bellevue staff used excessive force by drugging Plaintiff who showed no sign of violence.

159.   Bellevue nurses and hospital staff continued to detain plaintiff even after the police took off the handcuffs and left.

160.   Bellevue unnecessary detained Plaintiff for days without cause.

161.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983 - Fourth Amendment Violations Involving Unlawful Arrest
### (Against City, NYPD officers in their individual and official capacity)

162.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

163.   Plaintiff was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

164.   Defendant officers took no actions to investigate or question Obiagwu before wrongfully arresting him.

165.   Defendant officers had to reasonable medical justification therefore making the trip to the hospital a de-facto arrest.

166.    Officers refused to release plaintiff before they even planned or came up with a reason to take him to the hospital making the prolonged detainment a De-facto arrest.

167.    Plaintiff was fully conscious and rejected medical assistance both verbally and physically therefore making the governmental forced hospital trip and use of handcuffs an arrest.

168.    Plaintiff was under arrest by show of force and loss of right to refuse medical assistance.

169.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment.

### **Graham V. Connor 490 U.S. 386 (1989)**

170.    United States of appeals ruled that in order to make a claim of excessive force, it is to be analyzed by "objective reasonable standards" factors which includes; severity of the crime at hand, possible threats posed by the suspect to the safety of others including the officers, resisting arrest or attempting to evade arrest. By these United States standards the Defendants Moore, Akomeah, Leed and Segot  are guilty of excessive force.

### **Monell v. Dept. of social services of city of New York 436 U.S 658 (1978) violations of constitutional rights. Excessive force.**

**(Against City, Bellevue, its Nurses, staff, NYU Langone, its EMTs, NYPD officers in their individual and official capacity)**

171.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

172.    The defendants reiterated that Plaintiff threw himself down the escalator to hurt himself, claiming he was an Emotional Disturbed person (hereinafter "EDP") which prompted Plaintiff to be taken to a psychiatric hospital in restraints and upon being in the hospital he was held at a four point all limbs restraints, drugged and undressed against his will. The City caused, developed, wrote the policy or failed to create the policy that allows EDP to be treated with extreme care and gentle handling including using soft spoken words to de-escalate and verbally explain things to EDP for a safe interaction. Justin Segot who has TWENTY YEARS history and  experience as a police officer dealing with all forms of EDP should be well equipped both strategically and in communication.

173.    The lack of recurring training within the NYPD is the fault and direct results of the City cutting the budgets to essential wings of law enforcement such as the CCRB which limits resources and forces officers to be exonerated against every complaint due to investigations being botched from lack of funding.

174.    As a result of the above-mentioned failures and policies, the City has a policy, procedure, custom, and/or practice of not training, providing insufficient directives, and improperly supervising its officers and supervisors in responding to situations involving EDPs

175.    In 1999, NYPD officers shot and killed Gidone Busch, who was bipolar.

176.    Bellevue defendants have a custom of using excessive force against EDP's

177.    Bellevue defendants have a custom of keeping quotas and making sure beds are filled.

178.    Bellevue defendants have a custom and policy of forcing people to stay in custody for over 60 hours independent of medical justification.

179.    Bellevue defendants have a policy and custom of drugging patients who are not violent simply because they don't want to deal with the person

180.   Bellevue defendants have a policy and custom of drugging patients who are not violent simply because they're challenging the  legality of forced detainment.

181.   Bellevue defendants have a policy and custom of drugging patients who are not violent simply because they're "talking too much" or "making too much noise" which violates right of free speech.

182.   Bellevue defendants have a policy and custom of restraining every limb of patients who are not violent and did not resist.

183.   Bellevue defendants have a policy and custom of restraining every limb of patients who are not violent and did not resist simply because they were " talking too much"

184.   Bellevue defendants have a policy and custom of restraining every limb of patients who are not violent and did not resist simply because they don't want to "deal with" the person.

185.   Plaintiff was not violent and did not physically resist but was unnecessarily drugged due to policy of Bellevue.

186.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment.

187.   In 1984, Eleanor Bumpurs was deemed psychotic and shot and killed in the process of trying to evict her.

188.   A 2008 study by RAND recommended that NYPD should document and train officers decision making skills and use of force tactics ensuring that officers pass proficiency standards. The NYPD have disregarded this research and allowed officers to freestyle whatever method of dealing with EDPs they like including using guns and tasers when simply using time and patience can work.

189.   The failure of NYPD officers to follow the EDP policies in effect at the time of the incident and their failure to adequately supervise the officers under their commands contributed to Plaintiff's injuries.

190.   Plaintiff was faced up, handcuffed behind his back and strapped on a stretcher making it impossible for him to adjust the discomfort and potentially leading to panic attack which is highly dangerous and have led to numerous deaths among police officers in recent years. In 2012, NYPD officers suffocated and killed EDP Shauna Francis in Queens New York. On July 17 2014 NYPD officers choked Eric Garner to death which led to the Commissioner at the time William Bratton to issue retraining on use of force and de-escalation. It is clear that these trainings are no longer enforced or only taken seriously when a story of a detainee losing their life goes viral.

191.   On September 14, 2013, NYPD officers shot at an EDP identified as Glenn Broadnax, injuring two tourists in midtown in the process.

192.   NYPD has a policy and custom of retaliatory accusing people who refuse to engage or answer questions as "EDP"

193.   NYU Langone defendants have a policy and custom of blindly trusting and following police unlicensed medical opinions rather than diagnosing for themselves with their professional medical knowledge.

194.   NYU Langone  has a policy or custom of helping police conduct police business such as offering unsolicited help to physical stop and subdue people in police custody

195.   NYU Langone defendants have a custom of using excessive force against EDP's to force medical attention.

196.   Bellevue defendants have a policy and custom of blindly trusting and following police unlicensed medical opinions rather than diagnosing for themselves with their professional medical knowledge.

### 42 U.S.C. § 1983-Conspiracy to Deprive Civil Rights

(Against City, Bellevue, its Nurses, staff, NYU Langone, its EMTs, NYPD officers in their individual and official capacity)

197.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

198.   Defendant officers and EMT personnel, acting in their individual capacities and under color of law, conspired together and with each other, and reached a mutual understanding to undertake a course of conduct that violated Obiagwu's civil rights.

199.   Defendant officers and hospital staffs, acting in their individual capacities and under color of law, conspired together and with each other, and reached a mutual understanding to undertake a course of conduct that violated Obiagwu's civil rights

200.   In furtherance of this conspiracy, Defendants Moore, Akomeah, Leed and Segot discussed among each other on what to do to "cover their ass" and how they could force Obiagwu against his will to the psychiatric hospital

201.   Defendants Moore and Akomeah, discussed among each other along with officer Segot who wasn't on the scene but created a narrative that obiagwu was "acting disorderly" and "unable to care for himself" in order to help Moore come up with a "legal" reason for the prolonged detainment of Obiagwu.

202.   Officers colluded together to make up a false narrative that Obiagwu intentionally threw himself to the ground to hurt himself in order to justify forced hospitalization.

203.   All officers were informed and became aware that Obiagwu was only trying to go back to retrieve his property but they conspired to claim he was hurting himself and trying to trespass in order to justify the prolonged detainment.

204.   Officers discussed how they will retaliate against Obiagwu for giving their partner "a hard time"

205.   Officers and EMT personnel conspired and manipulated the facts to conclude a  narrative that Obiagwu who was of a sound mind was "not able to care for himself"

206.   Officers and EMT after speaking to each other came up with a plan to physically force Obiagwu into the ambulance against his will after he dispelled without a doubt any signs of mental illness.

207.    EMT assisted officers to put plaintiff on a stretcher and restrained him.

208.   Officers and EMT personnel colluded to bring business to the hospital so both NYU langone and the Bellevue hospital can bill Plantiff for services forced.

209.   Officers and Bellevue staffs in cahoots and a meeting of the mind worked together to search Obiagwu, his credit card and his cell phone until they forcibly identified him in order to bill him for non-consensual services

210.   The officers helped the Bellevue staff to narrate a report and gave them assurance that Obiagwu wanted to "hurt himself."

211.   Bellevue staffs took no action to evaluate or watch Obiagwu for medical signs or indications but rather gathered to collude with police on how they can force him to be admitted against his will.

212.   Bellevue Defendants discussed how they will force turnoff plaintiffs phone and wipe any video evidence that might show their collusion.

213.   NYU Langone and NYPD officers conspired to deprive plaintiff of his right by creating a false narrative of what caused plaintiff injuries and passing the narrative as fact to the hospital.

214.   NYU langone defendants knew before hand that taking the course of action they took will result in violence and they proceed to.

215.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983 - Fourteenth Amendment Violations of Due Process and equal protection
### (Against City, Bellevue, its Nurses, staff, NYPD officers in their individual and official capacity)

216.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

217.    Plaintiff was not provided equal protection of the law.

218.    Defendant NYPD had policies that violate the first amendment by stopping the filming of police activity.

219.    Defendants' intentional action to fabricate the facts around plaintiff's actions narrows the Plaintiff's due process rights under the Fourteenth Amendment.

220.    Bellevue nurses attempted erasing video evidence of the incident from plaintiffs mobile phone to obstruct justice or hinder an civil action.

221.    Bellevue nurses verbally admitted to attempting to hinder plaintiff's right to sue for the unjust detainment.

222.    Defendants acting in bad faith showed unfair treatment to Plaintiff due to his race.

223.    Defendant Bellevue, it's nurses and staff treated plaintiff like a known dangerous criminal based on the mere fact that plaintiff was in handcuffs.

224.    Defendants Bellevue, it's nurses and staff continued to treat plaintiff like a known dangerous criminal even after police removed the handcuffs and left the hospital making it clear plaintiff was no longer under arrest

225.    Bellevue defendants acted under color of state law by assuming and exercising custodial authority over Plaintiff within the New York City's "Mental Health Involuntary Removals." Order.

226.    Defendant Bellevue and its employees are liable under 42 U.S.C. § 1983 because the deprivation of liberty resulted from its policies, practices, or customs.

227.    Defendant Bellevue treated plaintiff like a criminal due to his race

228.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment. As a result of Defendants' actions, Plaintiff has suffered damages beyond what any amount of money can repair.

### Eight Amendment violation: Cruel &unsuual punishment

(Against City, Bellevue, its Nurses, staff, NYPD officers in their individual and official capacity)

229.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

230.    Rather than using disciplinary means such as a ticket or summons, NYPD Officers chose to take plaintiff to a psychiatric hospital to punish him for "being difficult"

231.    Officers knew that arresting plaintiff would result in only 24 hours detainment so they decided to take him to hospital to spend multiple days detained.

232.    Plaintiff was treated unlike other patients by the Bellevue nurses and staff

233.    Bellevue Defendants strapped all plaintiff's limbs flat to the bed with no possibility of moving any part of his body to install fear in him.

234.    Plaintiff was strapped in a way he was completely unable to itch, scratch any part of his body causing fear and panic of what could be done to him in such position.

235.    Plaintiff was strapped in a way completely unable to resist needles being inserted into his body

236.    Plaintiff was stripped naked to humiliate him among other patients.

237.    Bellevue nurses and  staffs unnecessarily strapped plaintiff into submission and drugged him before stripping off his clothes while he was unconscious.

238.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### 42 U.S.C. § 1983 Retaliatory arrest in violation of the First Amendment
### (Against city, NYPD officers in their individual and official capacity)

239.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

240.    The individual Defendants made the decision to handcuff and force Obiagwu to a psychiatric hospital in retaliation after Obiagwu engaged in constitutionally protected video gathering.

241.    Defendants Moore and Akomeah arrested Plaintiff in retaliation for recording their interaction.

242.    Additionally, Defendants' actions described herein have had a chilling effect on Obiagwu, who is now less likely to report on police activity out of fear of further unconstitutional treatment .

243.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment. As a result of Defendants' actions, Plaintiff has suffered damages beyond what any amount of money can repair.

### 1986 Emergency Medical Treatment & Labor Act (EMTALA)
### (Against City, Bellevue, it's staff and nurses,)

244.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

245.    Defendants Bellevue and its staff failed to provide medical screening to Plaintiff  who was brought in through the emergency department

246.    Defendants Bellevue and its staff failed to take into consideration plaintiff's pleadings refusing medical assistance.

247.    Defendants Bellevue and its employees inappropriately transferred Obiagwu to the psychiatric department without proper screening.

248.    Defendants Bellevue and its employees inappropriately transferred a conscious Obiagwu to the psychiatric department without his consent.

249.    Defendants Bellevue and its employees inappropriately treated Obiagwu like a mentally ill person based on his race.

250.    Defendant Bellevue nurses intentionally expressed that they will give plaintiff an offensive fictitious name he wouldn't like in retaliation for refusing forced medication.

251.    Bellevue treated plaintiff miserably due to not having insurance and not providing his full identity for insurance status check.

252.    Bellevue nurses and staff treated Plaintiff with deliberate indifference simply based on his race with no justification.

253.    Bellevue nurses and staff personnel treated Plaintiff like a violent patient based on his race and presumed EDP status.

254.    Bellevue defendants at all times were acting under color of law in their capacity as recipients of a federal funded and state and city controlled medical institute.

255.    Bellevue defendants at all times were acting under color of law and exercising custodial authority over Plaintiff within the City's and Mayor's "Mental Health Involuntary Removals" order.

256.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY or employees of a government owned hospital and their acts or omissions were conducted within the scope of their official duties or employment. As a result of Defendants' actions, Plaintiff has suffered damages beyond what any amount of money can repair.

### 42 U.S.C. § 1983 - Supervisory Liability
### (Against City, Bellevue, NYU Langone and NYPD)

257.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

258.    Failure to train officers on the first, fourth and other amendment rights

259.    Failure to terminate officers with great numbers of allegations of violence and abuse of authority.

260.    NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly forcing people to psychiatric hospitals without reasonable suspicion of mental illness to cover up for using force on innocent civilians who resist unlawful orders.

261.    NYU langone failure to train EMS on patient's right

262.    NYU langone failures to train EMS on decision making and taking lead regarding what's medically best when working along NYPD

263.    NYU langone handles hundreds to thousands of EDP cases yearly and should be better trained on how to treat whoever is believed to be unstable with extreme care and caution

264.    The supervisor's subordinates' failure to correct each other shows lack of leadership leading to violation of plaintiff's rights.

265.    Poor training resulted in NYU langone history and practice of blindly trusting word of officers over their own medical knowledge and procedure.

266.    Poor training resulted in NYU langone practice of supporting and defending NYPD officers over the well being of patients

267.    NYU langone personnel had direct knowledge that plaintiff clarified and provided an explanation to dispel any potential mental illness presumption but refused to take such into consideration

268.    NYU Langone failed to train EMS on how to better handle situations involving refusal of medical assistance

269.    Bellevue failed to train staff on how to better handle situations involving refusal of medical assistance

270.    Bellevue failed to train staff on how to better handle situations involving presumed EDP's

271.    Bellevue failed to train staff on how to better handle situations involving privacy of patient.

272.    Bellevue failed to train staff on how to better detect patients who are not EDP's without detaining for days.

273.    Bellevue failed to train staff on how to better handle situations involving patients who are not violent.

274.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983: Municipal Liability
### (Against the City)

275.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

276.    Defendant City is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the remaining Defendants' violation of Obiagwu's rights because the violations were caused by a policy, practice, or custom of the New York city Police Department. Among the NYPD policies, practices, or customs that caused constitutional harm to Obiagwu are the following:

277.    Due to City's lack of adequate training and poor overreach, NYPD has developed a custom, policy, or practice of violating the Fourth Amendment by regularly forcing people to psychiatric hospitals without reasonable suspicion of mental illness to cover up for using force on innocent civilians who resist unlawful orders.

278.    Due to City's lack of adequate training and poor overreach, NYPD has developed a custom, policy, or practice of violating the Fourth Amendment by regularly forcing people to psychiatric hospitals without reasonable suspicion of mental illness to justify searching innocent civilians property incident to hospital check-in.

279.    Defendants City and NYPD have failed in disciplining and terminating officers such as defendant Moore who acquired the most amount of complaints and accusations of violence, excessive force in her district.

280.    Additionally, Due to City's lack of adequate training and poor overreach, NYPD has developed a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

281.    Due to City's lack of adequate training and poor overreach, NYPD has developed policies, procedures, customs, and practices that encourage its officers to falsify facts to make warrantless search and seizures.

282.    **Schoolcraft v. City of New York, 10-CV-6005 (RWS) (S.D.N.Y.):** police officer alleges that he was arrested and committed to a psychiatric facility in retaliation for exposing an NYPD precinct's policies and practices of summons and arrest quotas, falsifying evidence and police records, perjury.

283.    **Lin v. City of New York, 09-CV-1936 (PGG) (S.D.N.Y.)**: officers arrested civilian for photographing an arrest of a bicyclist and signed criminal complaint with facts contradicted by video evidence.

284.    **Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.):** the Eastern District Court held that the police officer had established proof of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department

285.    **People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.):** Nypd officer intentionally swore a false complaint and got convicted for forging police records.

286.    On October 9, 2013, Civilian Complaint Review Board Deputy Executive Director Marcos Soler wrote to the Board Members of the CCRB that from January-August 2013, the NYPD declined to prosecute 29% of all substantiated CCRB cases against its officers.

287.    As a direct result of the Defendant City's failures and policies as described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress; lost time; loss of employment opportunity; and loss of faith in society., including mental anguish, physical harm, pain, and suffering.

## **PRAYER FOR RELIEF**

1.Judgment for compensatory damages; including damages for emotional distress, humiliation, loss of enjoyment of life,defamation and other pain and suffering on all claims allowed by law in an amount into be determine by a jury;

      B. economic losses on all claims allowed by law;

      C. special damages in an amount to be determined at trial;

      D. punitive damages on all claims allowed by law against all individual Defendants;

      F. pre- and post-judgment interest at the lawful rate; and,

2. Judgment for exemplary or punitive damages;

3. Cost of suit; attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

4. Monetary rewards for missed work opportunity

5. Any further relief that this court deems just and proper, and any other appropriate relief allowed by law and equity.

6. Wherefore Plaintiff prays for judgment against all defendants for their respective role.

7. Plaintiffs prays that this court impanel a lawful jury to hear this case.

## **PUNITIVE DAMAGE**

The actions of Defendants as described above were carried out in bad faith and with malice, and done with intent to cause injury. Defendant Moore who accumulated over 17 allegations involving use of force and violence. Punitive damages should be awarded to punish Defendants and to deter them, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

Submitted by;

/s/ Emmanuel Obiagwu.

908-708-4090

EmmanuelObiagwu@gmail.com

_____

Nov 10,  2025